## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Raymond F. Hanisco,                                    Chapter 7

                              Debtor.                  BK 12-46203

---

Daniel M. McDermott, United States Trustee,

                              Plaintiff,               Adv. No. 13-04202

vs.

Raymond F. Hanisco,

                              Defendant.

---

## APPLICATION FOR DEFAULT JUDGMENT

---

Daniel M. McDermott, plaintiff, in his capacity as United States Trustee, by and through his undersigned attorney, Colin Kreuziger, hereby applies for a default judgment to be entered against Raymond F. Hanisco, defendant, on the following grounds:

1.  On July 29, 2013, plaintiff filed a complaint under Fed. R. Bankr. P. 7001(4) seeking denial of the defendant's discharge pursuant to 11 U.S.C. § 727(a)(2)(A), (a)(3), (a)(4)(A), and (a)(5).

2.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and Fed. R. Bankr. P. 4004. This proceeding is a core proceeding.

3.  Summons was issued on July 29, 2013, by the United States Bankruptcy Court, District of Minnesota, directing the defendant to file an answer with the Court within thirty days after the date the summons was issued. (See Aff. of Default, Ex. 1.) The plaintiff mailed the complaint and summons to the defendant and his bankruptcy counsel on July 30, 2013. (See Aff. of Default, Ex. 2.)

4.      An answer to the complaint was due on August 28, 2013.   See Fed. R. Bankr. P. 7012(a).

5.      To date, the defendant has not filed an answer to the complaint.   (See Aff. of Default.)

6.      The plaintiff made the following factual allegations in his complaint:

- The defendant is a resident of the State of Minnesota and filed his petition for relief under chapter 7 of the Bankruptcy Code on October 30, 2012.

- In 2009, the defendant was employed by a company called Twin Cities Gold & Silver Exchange, LLC ("Twin Cities Gold").   The defendant left Twin Cities Gold and incorporated an entity called Guardian Gold & Silver Exchange, LLC ("Guardian") on September 28, 2009.   The defendant was the sole member of Guardian, its registered agent, and its president.   Schaun Waste was the vice-president of Guardian, and Patrick Robinson was general manager. Guardian operated a business that conducted transactions with customers around the country.   Specifically, Guardian solicited customers to purchase gold and coins from Guardian ("Purchase Transactions").   Guardian also marketed to and solicited consumers to sell their gold and silver coins to Guardian ("Liquidation Transactions").   Finally, Guardian solicited customers to trade their gold or coins for other metals or coins ("Trade Transactions").

- The defendant incorporated an entity called Wealth Preservation Society, LLC ("WPS") on September 30, 2009.   The defendant was the sole member of WPS and its president.   Schaun Waste was the vice-president of WPS.   Guardian and WPS operated out of the same facility, and funds were transferred between Guardian, WPS, the defendant, and the defendant's girlfriend, Margaret Huskey, without regard to any corporate formalities.   The defendant claims that he, Ms.

Huskey, and Guardian provided funds to WPS, but the defendant did not maintain any documents to verify any of the investments. According to the defendant's testimony at his Rule 2004 examination, WPS had an agreement with Double D Trading to invest in a gold ore tailings venture and share the profits from the venture. The defendant testified that Double D Trading was an entity owned and managed by an individual named Mark Dagel. The venture involved Double D Trading obtaining a leasehold interest in a gold mine site and processing gold ore tailings for the purpose of extracting precious metals from the tailings to sell for a profit. The defendant also testified that Ms. Huskey had an arrangement with the defendant, Guardian, WPS, and Double D Trading that required her to invest her personal funds with Double D Trading. The agreement further provided that Ms. Huskey would receive her investment and half of the profit generated by the investments back from Double D Trading. The other half of the profit generated by her investments would be gifted by Ms. Huskey to Guardian, and Guardian would use the funds to pay its creditors. Guardian, however, never made any such payments to its creditors.

- Dr. Joan Balcombe, a creditor of the defendant's, sent approximately $290,000.00 in coins to the defendant in January and February of 2012. Dr. Balcombe understood that the defendant would invest the funds generated from the liquidation of her coin collection in the WPS ore tailings venture. The defendant testified at his Rule 2004 examination that he liquidated the coins and invested the funds in WPS. The defendant testified that the funds he received from liquidating Ms. Balcombe's coins were deposited into Guardian's M&I bank

account, transferred to WPS's bank account, and then transferred to Double D Trading. The defendant, however, has not produced any documents to demonstrate that the funds were ever deposited in Guardian's M&I bank account, transferred to WPS, and then transferred to Double D Trading. For example, the defendant has not produced any bank statements for WPS despite multiple requests by the United States Trustee.

- Guardian structured its Purchase Transactions as follows. A customer contacted Guardian to purchase a specific item. Guardian did not maintain an inventory of coins, gold, or silver. Instead, it purchased inventory from a third party vendor. Upon receiving a request from a customer, Guardian would contact its third party vendors and advise the customer of the price to the customer to purchase the requested items. The price that Guardian provided to the customer was not the same as the amount that Guardian would pay to the third party vendor. Instead, the price that Guardian provided to the customer would exceed the amount that Guardian would pay to the third party vendor, and Guardian would retain the difference as profit. If the customer agreed to the Purchase Transaction, the customer would provide the funds to Guardian. The funds would be deposited into Guardian's bank account. Guardian would use a portion of the funds to purchase the item, retain its profit margin, and ship the items to the customer. Typically, the items would be purchased by the defendant, Schaun Waste, or Patrick Robinson.

- Guardian structured its Liquidation Transactions as follows. Guardian requested an inventory of a customer's items to be liquidated. Based on the inventory,

Guardian provided an estimate of the liquidation value of the items to the customer.   Again, the estimate included a discount to account for Guardian's profit margin on each transaction.   If the customer agreed to the Liquidation Transaction, the inventory was provided to Guardian.   Guardian then utilized a third party to liquidate the items.   When Guardian obtained the funds realized from the liquidation of the items, it retained its profit, and then sent a check for the difference to the customer.

- In the fall of 2009, Guardian settled a lawsuit filed by Twin Cities Gold for an amount between $30,000.00 and $35,000.00.   Guardian used funds that it received from customers to pay a $25,000.00 down payment in 2010, and it paid the outstanding amounts on a monthly basis.   Guardian also used funds to pay attorney fees that it incurred in connection with the lawsuit.

- October 29, 2010, Asset Marketing Services, Inc. filed a lawsuit against Guardian, the defendant, and a number of other individuals associated with Guardian. Judgment in the amount of $122,376.04 was entered against the defendant and Guardian on September 17, 2012.

- On January 20, 2011, Twin Cities Gold filed another lawsuit against Guardian. Guardian and the defendant entered into a settlement on February 10, 2012. Judgment in the amount of $67,565.35 was entered against the defendant and Guardian on August 7, 2012.   Guardian and Hanisco agreed to make a down payment on the judgment, and monthly payments to satisfy the remainder of the judgment.   During the course of the litigation, Guardian and Hanisco incurred attorney fees of approximately $81,000.00.

- In connection with the Purchase Transactions, the defendant represented to customers that they could send funds to Guardian, and that the funds would be used to purchase coins or other precious metals. The defendant also caused employees or independent contractors working for Guardian to make such representations. At the time that the representations were made, the defendant knew that Guardian was insolvent and could not afford to pay its attorney fees and lawsuit settlement payments. The defendant also knew that he would use some or all of the customer funds that he solicited to pay attorney fees, lawsuit settlement payments, or to invest in an entity that he owned called Wealth Preservation Society. The defendant was the only signatory on bank accounts owned by Guardian. He personally directed that funds provided by customers for the purchase of items would be used instead to pay attorney fees, lawsuit settlement payments, or to invest in Wealth Preservation Society. In those instances, Guardian did not use the funds sent by customers to purchase the items that Guardian or the defendant previously represented it would purchase on behalf of its customers.

- For example, on February 17, 2011, Edwina Hibel sent Guardian $237,000.00 to purchase gold coins. The defendant testified that some of the funds were sent to an entity called Higher Ground Financial Services ("Higher Ground") to purchase the coins. The defendant testified that Higher Ground never sent the coins to Guardian. The books and records of Guardian, however, indicate that Guardian wired $163,959.00 from its account to WPS's bank account on February 17, 2011. On the same day, WPS transferred $30,000.00 to Guardian and marked the entry

in its books as "owner salary." The following day, $123.510.00 was wired out of the WPS account to an unknown recipient. According to the defendant, there were no written agreements between himself, Guardian, or WPS regarding any of these transactions.

- In connection with the Trade Transactions, the defendant, through Guardian, represented to Eleanor Dubey, a customer, that she could trade her collection of gold coins to the defendant in return for $274,750.00 in gold ingots. Ms. Dubey sent the gold coins to Guardian, and Guardian liquidated the coins for $337,805.00 on May 9, 2011. The funds were wired into Guardian's bank account, and Ms. Dubey never received the gold ingots. The defendant has not explained the disposition of the $337,805.00, but he admits that the funds were used for a purpose other than paying Ms. Dubey. The defendant also admitted that, without the funds realized from the liquidation of Ms. Dubey's gold coins, Guardian was insolvent.

- In addition to Ms. Huskey and DD Trading, the defendant also solicited Dr. Joan Balcombe to invest in WPS in early 2012. The defendant claims that Ms. Balcombe agreed to send her coin collection for liquidation by the defendant. He also claims that she agreed to invest the proceeds in WPS. Dr. Balcombe did, in fact, provide the coins to the defendant, and they were liquidated for over $290,000.00. The defendant claims that the funds were routed to either Guardian or WPS's bank account, and the funds then were transferred to DD Trading. The defendant, however, has no record of the disposition of the funds. The defendant was the only signatory on bank accounts owned by WPS.

- The United States Trustee conducted an examination of the defendant pursuant to Fed. R. Bankr. P. 2004 on March 21, 2013. The United States Trustee adjourned the examination to a later date and requested a number of additional documents, including the following:

  - Bank statements for a Guardian bank account with an account number ending in 4056 for the period of time between October 2010 and the present.

  - Bank statements for a WPS bank account with an account number ending in 4078 for the period of time between October 2010 and the present.

  - Bank statements for a Wells Fargo bank account with an account number ending in 4801 for the period of time between October 2010 and the present.

  - Bank statements for the defendant's Wings Financial Credit Union bank account for the period of time between October 2010 and the present.

  - Bank statements for a Guardian Wells Fargo bank account with an account number ending in 9342 for the period of time between October 2010 and the present.

  - Bank statements for a Guardian Wells Fargo bank account with an unknown bank account number (referenced as "Equity Line GGSE" in the defendant's personal Wells Fargo bank account) for the period of time between October 2010 and the present.

  - Bank statements for a Guardian Wells Fargo bank account with an unknown bank account number (referenced as "savings GGSE" in the defendant's personal Wells Fargo bank account) for the period of time between October 2010 and the present.

  - Bank statements for a Guardian Wells Fargo bank account with an unknown bank account number (referenced as "checking GGSE" in the defendant's personal Wells Fargo bank account) for the period of time between October 2010 and the present.

  - Settlement agreements between Twin Cities Gold & Silver Exchange and the defendant and/or Guardian.

  - Settlement agreements between Asset Marketing Services and the defendant and/or Guardian.

  - Signed, written agreements between Double D Trading and WPS and/or Guardian and/or the defendant.

  - Signed, written agreements between Double D Trading and Margaret

Huskey.

- o Signed, written agreements between Balcombe and Wealth Preservation Society and/or Double D Trading.

- o Signed, written agreements between Higher Ground Financial and Guardian Gold and/or the defendant.

- o A general ledger or checkbook register for all of the defendant's personal bank accounts, covering the period of time between October 30, 2010 and the present.

The United States Trustee also requested that the examination be reconvened.

The defendant did not provide the documents referenced above, and he has not responded to the request to reconvene the examination.

- The defendant filed a voluntary petition on October 30, 2012.

- The defendant transferred $163,959.00 from Guardian's Bank account to WPS's bank account on February 17, 2011. As set forth below, Guardian and WPS were alter egos for the defendant, and therefore the funds were property of the debtor. The funds were diverted to either the defendant or WPS and used for the defendant's personal purposes. Prior to the transfer of the funds, the defendant or Guardian represented to Edwina Hibel that the funds she provided to Guardian would be used to purchase gold coins. The defendant had no intention of using the funds to purchase gold coins for Ms. Hibel, and therefore the representations were fraudulent. The defendant transferred the funds with the intent to hinder, delay or defraud his creditors, including Ms. Hibel. The defendant continued to conceal the funds from Ms. Hibel within one year of the filing of his bankruptcy petition.

- The defendant transferred $337,805.00 from Guardian's Bank account to unknown recipients at some time after receipt of the funds from Ms. Dubey on

May 9, 2011.  As set forth below, Guardian and WPS were alter egos for the defendant, and therefore the funds were property of the debtor.   Prior to the transfer of the funds, the defendant or Guardian represented to Ms. Dubey that Guardian would liquidate her gold coins and use the proceeds to purchase gold ingots, which would be shipped to Ms. Dubey.   The defendant had no intention of purchasing the gold ingots for Ms. Dubey, and therefore the representations were fraudulent.   The defendant transferred the funds with the intent to hinder, delay or defraud his creditors, including Ms. Dubey.   The defendant continued to conceal the funds from Ms. Dubey within one year of the filing of his bankruptcy petition.

- The defendant transferred at least $290,000.00 from Guardian's bank account or WPS's bank account to unknown recipients at some time after receipt of the funds from the liquidation of Dr. Balcombe's coin collection.   As set forth below, Guardian and WPS were alter egos for the defendant, and therefore the funds were property of the debtor.   Prior to the transfer of the funds, the defendant represented to Dr. Balcombe that WPS would invest the funds and return the investment to Dr. Balcombe with interest.   The defendant had no intention of returning the investment to Dr. Balcombe, and therefore the representations were fraudulent.   The defendant transferred the funds with the intent to hinder, delay or defraud his creditors, including Dr. Balcombe.   The defendant transferred the funds within one year of the filing of his bankruptcy petition.

- Guardian and WPS were alter egos for the defendant.   Neither entity was sufficiently capitalized for the purposes of their respective corporate undertakings.   Corporate formalities were not followed when funds were transferred between the

defendant, Guardian, and WPS. Guardian and WPS were insolvent when the funds of customers were diverted as discussed above. The funds were siphoned by the defendant, who was the sole member of both Guardian and WPS, for the defendant's personal use. Neither corporate entity maintained adequate corporate records. In addition, the defendant operated Guardian and WPS as a constructive fraud and in an unjust manner, as described above. As a result, the Court should pierce the corporate veil as to Guardian and WPS, and should treat the transfers as property of the debtor rather than as property of Guardian or WPS.

- The defendant failed to keep or preserve recorded information related to the business transactions of Guardian and WPS. Specifically, the defendant has not kept or preserved the following documents:

    o Bank statements for a Guardian bank account with an account number ending in 4056 for the period of time between October 2010 and the present.

    o Bank statements for a WPS bank account with an account number ending in 4078 for the period of time between October 2010 and the present.

    o Bank statements for a Wells Fargo bank account with an account number ending in 4801 for the period of time between October 2010 and the present.

    o Bank statements for the defendant's Wings Financial Credit Union bank account for the period of time between October 2010 and the present.

    o Bank statements for a Guardian Wells Fargo bank account with an account number ending in 9342 for the period of time between October 2010 and the present.

    o Bank statements for a Guardian Wells Fargo bank account with an unknown bank account number (referenced as "Equity Line GGSE" in the defendant's personal Wells Fargo bank account) for the period of time between October 2010 and the present.

    o Bank statements for a Guardian Wells Fargo bank account with an unknown bank account number (referenced as "savings GGSE" in the defendant's personal Wells Fargo bank account) for the period of time

between October 2010 and the present.

  o  Bank statements for a Guardian Wells Fargo bank account with an
     unknown bank account number (referenced as "checking GGSE" in the
     defendant's personal Wells Fargo bank account) for the period of time
     between October 2010 and the present.

  o  Settlement agreements between Twin Cities Gold & Silver Exchange and
     the defendant and/or Guardian.

  o  Settlement agreements between Asset Marketing Services and the
     defendant and/or Guardian.

  o  Signed, written agreements between Double D Trading and WPS and/or
     Guardian and/or the defendant.

  o  Signed, written agreements between Double D Trading and Margaret
     Huskey.

  o  Signed, written agreements between Dr. Balcombe and Wealth
     Preservation Society and/or Double D Trading.

  o  Signed, written agreements between Higher Ground Financial and
     Guardian Gold and/or the defendant.

  o  A general ledger or checkbook register for all of the defendant's personal
     bank accounts, covering the period of time between October 30, 2010 and
     the present.

- The failure to keep or preserve the documents referenced above makes it
  impossible to ascertain the defendant's business transactions and financial
  condition.

- The defendant's failure to keep or preserve recorded information, including bank
  statements, is not justified under all of the circumstances of this case.

- As a result of the defendant's conduct, plaintiff is entitled to an order denying the
  defendants' discharge under 11 U.S.C. § 727(a)(3).

- The defendant knowingly and fraudulently made false oaths at the Rule 2004
  examination by failing to disclose three bank accounts that belonged to Guardian,

namely:   (1) a Wells Fargo bank account with an unknown bank account number (referenced as "Equity Line GGSE" in the defendant's personal Wells Fargo bank account); (2) a Wells Fargo bank account with an unknown bank account number (referenced as "savings GGSE" in the defendant's personal Wells Fargo bank account); and (3) a Wells Fargo bank account with an unknown bank account number (referenced as "checking GGSE" in the defendant's personal Wells Fargo bank account).

- The defendant knowingly and fraudulently made false oaths at the Rule 2004 examination by testifying that he never diverted funds from Guardian's customers to invest in WPS.

- As set forth above, Guardian was the alter ego of the defendant, and the defendant's false oaths were material omissions regarding the defendant's property and property of the bankruptcy estate.

- As a result of the defendant's false oaths, the plaintiff is entitled to an order denying the defendant's discharge under 11 U.S.C. § 727(a)(4)(A).

- As set forth above, Guardian and WPS were alter egos of the defendant.

- The defendant, through Guardian and WPS, received funds of at least $163,959.00 from Edwina Hibel on February 17, 2011.

- The defendant, through Guardian and WPS, received and liquidated gold coins with a value of $337,805.00 from Edwina Hibel on May 9, 2011.

- The defendant, through Guardian and WPS, received and liquidated coins with a value of at least $290,000.00 during January and February of 2012 from Dr. Joan Balcombe.

- The defendant maintains that he did not have any of the funds referenced above when he filed his bankruptcy petition.

- The defendant has not provided a satisfactory explanation for the loss of the funds referenced above.

- As a result of the defendant's failure to provide a satisfactory explanation for the loss of the funds referenced above, the plaintiff is entitled to an order denying the defendant's discharge under 11 U.S.C. § 727(a)(5).

WHEREFORE, the plaintiff requests that the Court enter an order denying the defendant's discharge.


Dated: August 29, 2013

DANIEL M. MCDERMOTT,
UNITED STATES TRUSTEE
REGION 12

/e/ Colin Kreuziger
Colin Kreuziger
Trial Attorney
MN Atty No. 0386834
Office of U.S. Trustee
1015 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
TELE: (612)334-1350

**VERIFICATION**

I, Colin Kreuziger, a trial attorney for the United States Trustee, the Plaintiff herein, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information and belief.

Executed on August 29, 2013

<u>/e/ Colin Kreuziger</u>
Colin Kreuziger
Trial Attorney
MN Atty No. 0386834
Office of U.S. Trustee
1015 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
TELE: (612) 334-1350

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

**In re:**

**Raymond F. Hanisco,**                          **Chapter 7**

                    **Debtor.**          **BK 12-46203**

---

**Daniel M. McDermott, United States Trustee,**

                 **Plaintiff,**          **Adv. No. 13-04202**

**vs.**

**Raymond F. Hanisco,**

            **Defendant.**

---

## AFFIDAVIT OF DEFAULT

---

I, Colin Kreuziger, being duly sworn and under oath, state that:

1. I am employed as a trial attorney for the United States Department of Justice.

2. I am the attorney of record for the plaintiff in the above-entitled adversary proceeding.

3. The plaintiff has not been served with an answer by the defendant. A CM/ECF docket report generated on August 29, 2013, shows that no answer was docketed by the Court within the time prescribed by the bankruptcy rules. (See Ex. 1.)

4. The plaintiff mailed the complaint and summons to the defendant and his bankruptcy counsel on July 30, 2013. (See Ex. 2.)

This concludes my Affidavit.

Dated:   August 29, 2013

                                      Colin Kreuziger
                                      Trial Attorney

Subscribed and Sworn Before Me This _____29th_____ Day of August, 2013

Notary Public

THOMAS E. KLEINER
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2015

**727OBJ**

# US Bankruptcy Court
## District of Minnesota (Minneapolis)
## Adversary Proceeding #: 13-04202

*Assigned to:* Judge Kathleen H Sanberg                    *Date Filed:* 07/29/13
*Lead BK Case:* 12-46203
*Lead BK Title:* Raymond F Hanisco
*Lead BK Chapter:* 7
*Demand:*

*Nature[s] of Suit:* 41 Objection / revocation of discharge - 727(c),(d),(e)


*Plaintiff*
-----------------------
**Daniel M McDermott**                    represented by **Colin Kreuziger**
United States Trustee                                    US Trustee Office
1015 US Courthouse                                       1015 U S Courthouse
300 S 4th St                                             300 S 4th St
Minneapolis, MN 55415                                    Minneapolis, MN 55415
                                                         612-334-1350
                                                         Email: Colin.Kreuziger@usdoj.gov
                                                         *LEAD ATTORNEY*


V.


*Defendant*
----------------------
**Raymond F Hanisco**
18756 Nature Lane
Eden Prairie, MN 55346
SSN / ITIN: xxx-xx-6290

| Filing Date | # | Docket Text |
|---|---|---|
| 07/29/2013 | 1 (14 pgs) | Adversary case 13-04202. (41 (Objection / revocation of discharge - 727(c),(d),(e))), Complaint by Daniel M McDermott against Raymond F Hanisco. No Fee. (Kreuziger-AW, Colin) (Entered: 07/29/2013) |
| 07/29/2013 | 2 (1 pg) | Summons issued on Raymond F Hanisco Date Issued 7/29/2013, Answer Due 8/28/2013 (Carrie MNBM) (Entered: 07/29/2013) |

| 07/29/2013 | <u>3</u><br>(1 pg) | Pro bono notice to defendants re: <u>1</u> Complaint. (Carrie MNBM) (Entered: 07/29/2013) |
| 07/30/2013 | <u>4</u><br>(2 pgs) | Certificate of service (re:<u>1</u> Complaint, <u>2</u> Summons for adversary proceeding) filed by Daniel M McDermott. (Kreuziger-AW, Colin) (Entered: 07/30/2013) |
| 07/31/2013 | <u>5</u><br>(3 pgs) | BNC Certificate of Mailing. Notice Date 07/31/2013. (Admin.) (Entered: 08/01/2013) |

<table>
<tr><td colspan="4" align="center"><strong>PACER Service Center</strong></td></tr>
<tr><td colspan="4" align="center"><strong>Transaction Receipt</strong></td></tr>
<tr><td colspan="4" align="center">08/29/2013 14:44:25</td></tr>
<tr><td><strong>PACER Login:</strong></td><td>xb0112</td><td><strong>Client Code:</strong></td><td>DOJ</td></tr>
<tr><td><strong>Description:</strong></td><td>Docket Report</td><td><strong>Search Criteria:</strong></td><td>13-04202 Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included</td></tr>
<tr><td><strong>Billable Pages:</strong></td><td>1</td><td><strong>Cost:</strong></td><td>0.10</td></tr>
</table>

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

**In re:**

**BK 12-46203**

**Raymond F. Hanisco**

**Chapter 7**

**Debtor(s)**

---

**Daniel M. McDermott, United States Trustee**

**Plaintiff,**

**vs.**

**Adv. No. 13-04202**

**Raymond F. Hanisco,**

**Defendant(s).**

---

## AFFIDAVIT OF SERVICE

---

The undersigned hereby certifies under penalty of perjury that she is an employee in the Office of the United States Trustee for the District of Minnesota and is a person of such age and discretion as to be competent to serve papers.

That on July 30, 2013, she served a copy of the United States Trustee's Summons & Complaint Objecting to Discharge in the above-referenced case by placing said copy in a postpaid envelope addressed to the person(s) hereinafter named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Minneapolis, Minnesota.

**Addressee(s):**

**Raymond F Hanisco**
18756 Nature Lane
Eden Prairie, MN 55346

**Chad J. Bolinske**
Bolinske & Bolinske PLLC
6465 Wayzata Blvd
Ste 780
St Louis Park, MN 55426

Brian Leonard
CM/ECF

**Office of the United States Trustee**
**Audrey Williams**

**Subscribed and sworn to before**
**me the _30th_ day of July, 2013.**

**Notary Public**

**THOMAS E. KLEINER**
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2015

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:

Raymond F. Hanisco,                                    Chapter 7

                              Debtor.                   BK 12-46203

---

Daniel M. McDermott, United States Trustee,

                              Plaintiff,                Adv. No. 13-04202

vs.

Raymond F. Hanisco,

                              Defendant.

---

## AFFIDAVIT OF IDENTIFICATION

---

I, Colin Kreuziger, being duly sworn and under oath, state that:

1.      I am employed as a trial attorney for the United States Department of Justice.

2.      I am the attorney of record for the plaintiff in the above-entitled adversary case.

3.      The name and address of the defendant in the above-entitled matter is listed on record as: Raymond F Hanisco, 18756 Nature Lane, Eden Prairie, MN 55346. (<u>See</u> Aff.of Default, Ex. 1.)

4.      Original Schedule I indicates that the defendant is widowed with no minor children. (<u>See</u> Ex. A.)

5.      According to the attached schedule, the defendant is not an infant and is not employed by a military organization.

6.      No assertion of incompetence or military service has been asserted in the bankruptcy case or to the United States Trustee in response to this complaint.

7.     Based on the foregoing, I am of the belief that the defendant is competent.


Dated:   August 29, 2013


_____

Colin Kreuziger
Trial Attorney


Subscribed and Sworn Before Me This _____ *29th* _____ Day of August, 2013.


_____
Notary Public

THOMAS E. KLEINER
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2015

In re   **Raymond F Hanisco** _____   Case No. _____

Debtor(s)

# SCHEDULE I - CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by every married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. Do not state the name of any minor child. The average monthly income calculated on this form may differ from the current monthly income calculated on Form 22A, 22B, or 22C.

| Debtor's Marital Status: | DEPENDENTS OF DEBTOR AND SPOUSE | |
|---|---|---|
| **Widowed** | RELATIONSHIP(S):<br>**None.** | AGE(S): |

| Employment: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | | |
| Name of Employer | **Self employed** | |
| How long employed | | |
| Address of Employer | | |

| INCOME: (Estimate of average or projected monthly income at time case filed) | | DEBTOR | | SPOUSE |
|---|---|---|---|---|
| 1. Monthly gross wages, salary, and commissions (Prorate if not paid monthly) | $ | 0.00 | $ | N/A |
| 2. Estimate monthly overtime | $ | 0.00 | $ | N/A |
| 3. SUBTOTAL | $ | 0.00 | $ | N/A |
| 4. LESS PAYROLL DEDUCTIONS | | | | |
| a. Payroll taxes and social security | $ | 0.00 | $ | N/A |
| b. Insurance | $ | 0.00 | $ | N/A |
| c. Union dues | $ | 0.00 | $ | N/A |
| d. Other (Specify): | $ | 0.00 | $ | N/A |
| | $ | 0.00 | $ | N/A |
| 5. SUBTOTAL OF PAYROLL DEDUCTIONS | $ | 0.00 | $ | N/A |
| 6. TOTAL NET MONTHLY TAKE HOME PAY | $ | 0.00 | $ | N/A |
| 7. Regular income from operation of business or profession or farm (Attach detailed statement) | $ | 0.00 | $ | N/A |
| 8. Income from real property | $ | 0.00 | $ | N/A |
| 9. Interest and dividends | $ | 0.00 | $ | N/A |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above | $ | 0.00 | $ | N/A |
| 11. Social security or government assistance (Specify): | $ | 0.00 | $ | N/A |
| | $ | 0.00 | $ | N/A |
| 12. Pension or retirement income | $ | 0.00 | $ | N/A |
| 13. Other monthly income (Specify): | $ | 0.00 | $ | N/A |
| | $ | 0.00 | $ | N/A |
| 14. SUBTOTAL OF LINES 7 THROUGH 13 | $ | 0.00 | $ | N/A |
| 15. AVERAGE MONTHLY INCOME (Add amounts shown on lines 6 and 14) | $ | 0.00 | $ | N/A |
| 16. COMBINED AVERAGE MONTHLY INCOME: (Combine column totals from line 15) | | | $ | 0.00 |

(Report also on Summary of Schedules and, if applicable, on<br>Statistical Summary of Certain Liabilities and Related Data)

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

**In re:**

| | |
|---|---|
| **Raymond F. Hanisco,** | **Chapter 7** |
| **Debtor.** | **BK 12-46203** |

---

**Daniel M. McDermott, United States Trustee,**

| | |
|---|---|
| **Plaintiff,** | **Adv. No. 13-04202** |
| **vs.** | |

**Raymond F. Hanisco,**

**Defendant.**

---

## AFFIDAVIT ON MERITS AND AMOUNT DUE

---

I, Colin Kreuziger, being duly sworn and under oath, state that:

1.  I am a trial attorney for the United States Department of Justice.

2.  I am the attorney of record for the plaintiff in the above-entitled case.

3.  A monetary judgment has not been requested in this adversary proceeding.   The
    plaintiff seeks denial of the defendant's chapter 7 discharge in bankruptcy case
    number 12-46203.

4.  The plaintiff has a legal basis upon which to request such relief pursuant to the
    authority of 11 U.S.C. § 727(a)(2)(A), (a)(3), (a)(4)(A), and (a)(5).

5.  Said relief is supported by the following facts:

    *   The defendant is a resident of the State of Minnesota and filed his petition for
        relief under chapter 7 of the Bankruptcy Code on October 30, 2012.

    *   In 2009, the defendant was employed by a company called Twin Cities Gold &

Silver Exchange, LLC ("Twin Cities Gold").    The defendant left Twin Cities

Gold and incorporated an entity called Guardian Gold & Silver Exchange, LLC

("Guardian") on September 28, 2009.    The defendant was the sole member of

Guardian, its registered agent, and its president.    Schaun Waste was the

vice-president of Guardian, and Patrick Robinson was general manager.

Guardian operated a business that conducted transactions with customers around

the country.    Specifically, Guardian solicited customers to purchase gold and

coins from Guardian ("Purchase Transactions").    Guardian also marketed to and

solicited consumers to sell their gold and silver coins to Guardian ("Liquidation

Transactions").    Finally, Guardian solicited customers to trade their gold or coins

for other metals or coins ("Trade Transactions").

- The defendant incorporated an entity called Wealth Preservation Society, LLC

  ("WPS") on September 30, 2009.    The defendant was the sole member of WPS

  and its president.    Schaun Waste was the vice-president of WPS.    Guardian and

  WPS operated out of the same facility, and funds were transferred between

  Guardian, WPS, the defendant, and the defendant's girlfriend, Margaret Huskey,

  without regard to any corporate formalities.    The defendant claims that he, Ms.

  Huskey, and Guardian provided funds to WPS, but the defendant did not maintain

  any documents to verify any of the investments.    According to the defendant's

  testimony at his Rule 2004 examination, WPS had an agreement with Double D

  Trading to invest in a gold ore tailings venture and share the profits from the

  venture.    The defendant testified that Double D Trading was an entity owned and

  managed by an individual named Mark Dagel.    The venture involved Double D

Trading obtaining a leasehold interest in a gold mine site and processing gold ore tailings for the purpose of extracting precious metals from the tailings to sell for a profit. The defendant also testified that Ms. Huskey had an arrangement with the defendant, Guardian, WPS, and Double D Trading that required her to invest her personal funds with Double D Trading. The agreement further provided that Ms. Huskey would receive her investment and half of the profit generated by the investments back from Double D Trading. The other half of the profit generated by her investments would be gifted by Ms. Huskey to Guardian, and Guardian would use the funds to pay its creditors. Guardian, however, never made any such payments to its creditors.

- Dr. Joan Balcombe, a creditor of the defendant's, sent approximately $290,000.00 in coins to the defendant in January and February of 2012. Dr. Balcombe understood that the defendant would invest the funds generated from the liquidation of her coin collection in the WPS ore tailings venture. The defendant testified at his Rule 2004 examination that he liquidated the coins and invested the funds in WPS. The defendant testified that the funds he received from liquidating Ms. Balcombe's coins were deposited into Guardian's M&I bank account, transferred to WPS's bank account, and then transferred to Double D Trading. The defendant, however, has not produced any documents to demonstrate that the funds were ever deposited in Guardian's M&I bank account, transferred to WPS, and then transferred to Double D Trading. For example, the defendant has not produced any bank statements for WPS despite multiple requests by the United States Trustee.

- Guardian structured its Purchase Transactions as follows. A customer contacted Guardian to purchase a specific item. Guardian did not maintain an inventory of coins, gold, or silver. Instead, it purchased inventory from a third party vendor. Upon receiving a request from a customer, Guardian would contact its third party vendors and advise the customer of the price to the customer to purchase the requested items. The price that Guardian provided to the customer was not the same as the amount that Guardian would pay to the third party vendor. Instead, the price that Guardian provided to the customer would exceed the amount that Guardian would pay to the third party vendor, and Guardian would retain the difference as profit. If the customer agreed to the Purchase Transaction, the customer would provide the funds to Guardian. The funds would be deposited into Guardian's bank account. Guardian would use a portion of the funds to purchase the item, retain its profit margin, and ship the items to the customer. Typically, the items would be purchased by the defendant, Schaun Waste, or Patrick Robinson.

- Guardian structured its Liquidation Transactions as follows. Guardian requested an inventory of a customer's items to be liquidated. Based on the inventory, Guardian provided an estimate of the liquidation value of the items to the customer. Again, the estimate included a discount to account for Guardian's profit margin on each transaction. If the customer agreed to the Liquidation Transaction, the inventory was provided to Guardian. Guardian then utilized a third party to liquidate the items. When Guardian obtained the funds realized from the liquidation of the items, it retained its profit, and then sent a check for

4

the difference to the customer.

- In the fall of 2009, Guardian settled a lawsuit filed by Twin Cities Gold for an amount between $30,000.00 and $35,000.00. Guardian used funds that it received from customers to pay a $25,000.00 down payment in 2010, and it paid the outstanding amounts on a monthly basis. Guardian also used funds to pay attorney fees that it incurred in connection with the lawsuit.

- October 29, 2010, Asset Marketing Services, Inc. filed a lawsuit against Guardian, the defendant, and a number of other individuals associated with Guardian. Judgment in the amount of $122,376.04 was entered against the defendant and Guardian on September 17, 2012.

- On January 20, 2011, Twin Cities Gold filed another lawsuit against Guardian. Guardian and the defendant entered into a settlement on February 10, 2012. Judgment in the amount of $67,565.35 was entered against the defendant and Guardian on August 7, 2012. Guardian and Hanisco agreed to make a down payment on the judgment, and monthly payments to satisfy the remainder of the judgment. During the course of the litigation, Guardian and Hanisco incurred attorney fees of approximately $81,000.00.

- In connection with the Purchase Transactions, the defendant represented to customers that they could send funds to Guardian, and that the funds would be used to purchase coins or other precious metals. The defendant also caused employees or independent contractors working for Guardian to make such representations. At the time that the representations were made, the defendant knew that Guardian was insolvent and could not afford to pay its attorney fees and

lawsuit settlement payments. The defendant also knew that he would use some or all of the customer funds that he solicited to pay attorney fees, lawsuit settlement payments, or to invest in an entity that he owned called Wealth Preservation Society. The defendant was the only signatory on bank accounts owned by Guardian. He personally directed that funds provided by customers for the purchase of items would be used instead to pay attorney fees, lawsuit settlement payments, or to invest in Wealth Preservation Society. In those instances, Guardian did not use the funds sent by customers to purchase the items that Guardian or the defendant previously represented it would purchase on behalf of its customers.

- For example, on February 17, 2011, Edwina Hibel sent Guardian $237,000.00 to purchase gold coins. The defendant testified that some of the funds were sent to an entity called Higher Ground Financial Services ("Higher Ground") to purchase the coins. The defendant testified that Higher Ground never sent the coins to Guardian. The books and records of Guardian, however, indicate that Guardian wired $163,959.00 from its account to WPS's bank account on February 17, 2011. On the same day, WPS transferred $30,000.00 to Guardian and marked the entry in its books as "owner salary." The following day, $123.510.00 was wired out of the WPS account to an unknown recipient. According to the defendant, there were no written agreements between himself, Guardian, or WPS regarding any of these transactions.

- In connection with the Trade Transactions, the defendant, through Guardian, represented to Eleanor Dubey, a customer, that she could trade her collection of

gold coins to the defendant in return for $274,750.00 in gold ingots. Ms. Dubey sent the gold coins to Guardian, and Guardian liquidated the coins for $337,805.00 on May 9, 2011. The funds were wired into Guardian's bank account, and Ms. Dubey never received the gold ingots. The defendant has not explained the disposition of the $337,805.00, but he admits that the funds were used for a purpose other than paying Ms. Dubey. The defendant also admitted that, without the funds realized from the liquidation of Ms. Dubey's gold coins, Guardian was insolvent.

- In addition to Ms. Huskey and DD Trading, the defendant also solicited Dr. Joan Balcombe to invest in WPS in early 2012. The defendant claims that Ms. Balcombe agreed to send her coin collection for liquidation by the defendant. He also claims that she agreed to invest the proceeds in WPS. Dr. Balcombe did, in fact, provide the coins to the defendant, and they were liquidated for over $290,000.00. The defendant claims that the funds were routed to either Guardian or WPS's bank account, and the funds then were transferred to DD Trading. The defendant, however, has no record of the disposition of the funds. The defendant was the only signatory on bank accounts owned by WPS.

- The United States Trustee conducted an examination of the defendant pursuant to Fed. R. Bankr. P. 2004 on March 21, 2013. The United States Trustee adjourned the examination to a later date and requested a number of additional documents, including the following:

  o Bank statements for a Guardian bank account with an account number ending in 4056 for the period of time between October 2010 and the present.

o Bank statements for a WPS bank account with an account number ending in 4078 for the period of time between October 2010 and the present.

o Bank statements for a Wells Fargo bank account with an account number ending in 4801 for the period of time between October 2010 and the present.

o Bank statements for the defendant's Wings Financial Credit Union bank account for the period of time between October 2010 and the present.

o Bank statements for a Guardian Wells Fargo bank account with an account number ending in 9342 for the period of time between October 2010 and the present.

o Bank statements for a Guardian Wells Fargo bank account with an unknown bank account number (referenced as "Equity Line GGSE" in the defendant's personal Wells Fargo bank account) for the period of time between October 2010 and the present.

o Bank statements for a Guardian Wells Fargo bank account with an unknown bank account number (referenced as "savings GGSE" in the defendant's personal Wells Fargo bank account) for the period of time between October 2010 and the present.

o Bank statements for a Guardian Wells Fargo bank account with an unknown bank account number (referenced as "checking GGSE" in the defendant's personal Wells Fargo bank account) for the period of time between October 2010 and the present.

o Settlement agreements between Twin Cities Gold & Silver Exchange and the defendant and/or Guardian.

o Settlement agreements between Asset Marketing Services and the defendant and/or Guardian.

o Signed, written agreements between Double D Trading and WPS and/or Guardian and/or the defendant.

o Signed, written agreements between Double D Trading and Margaret Huskey.

o Signed, written agreements between Balcombe and Wealth Preservation Society and/or Double D Trading.

o Signed, written agreements between Higher Ground Financial and Guardian Gold and/or the defendant.

- A general ledger or checkbook register for all of the defendant's personal bank accounts, covering the period of time between October 30, 2010 and the present.

The United States Trustee also requested that the examination be reconvened.

The defendant did not provide the documents referenced above, and he has not responded to the request to reconvene the examination.

- The defendant filed a voluntary petition on October 30, 2012.

- The defendant transferred $163,959.00 from Guardian's Bank account to WPS's bank account on February 17, 2011.   As set forth below, Guardian and WPS were alter egos for the defendant, and therefore the funds were property of the debtor. The funds were diverted to either the defendant or WPS and used for the defendant's personal purposes.   Prior to the transfer of the funds, the defendant or Guardian represented to Edwina Hibel that the funds she provided to Guardian would be used to purchase gold coins.   The defendant had no intention of using the funds to purchase gold coins for Ms. Hibel, and therefore the representations were fraudulent.   The defendant transferred the funds with the intent to hinder, delay or defraud his creditors, including Ms. Hibel.   The defendant continued to conceal the funds from Ms. Hibel within one year of the filing of his bankruptcy petition.

- The defendant transferred $337,805.00 from Guardian's Bank account to unknown recipients at some time after receipt of the funds from Ms. Dubey on May 9, 2011.   As set forth below, Guardian and WPS were alter egos for the defendant, and therefore the funds were property of the debtor.   Prior to the transfer of the funds, the defendant or Guardian represented to Ms. Dubey that

Guardian would liquidate her gold coins and use the proceeds to purchase gold ingots, which would be shipped to Ms. Dubey.   The defendant had no intention of purchasing the gold ingots for Ms. Dubey, and therefore the representations were fraudulent.   The defendant transferred the funds with the intent to hinder, delay or defraud his creditors, including Ms. Dubey.   The defendant continued to conceal the funds from Ms. Dubey within one year of the filing of his bankruptcy petition.

- The defendant transferred at least $290,000.00 from Guardian's bank account or WPS's bank account to unknown recipients at some time after receipt of the funds from the liquidation of Dr. Balcombe's coin collection.   As set forth below, Guardian and WPS were alter egos for the defendant, and therefore the funds were property of the debtor.   Prior to the transfer of the funds, the defendant represented to Dr. Balcombe that WPS would invest the funds and return the investment to Dr. Balcombe with interest.   The defendant had no intention of returning the investment to Dr. Balcombe, and therefore the representations were fraudulent.   The defendant transferred the funds with the intent to hinder, delay or defraud his creditors, including Dr. Balcombe.   The defendant transferred the funds within one year of the filing of his bankruptcy petition.

- Guardian and WPS were alter egos for the defendant.   Neither entity was sufficiently capitalized for the purposes of their respective corporate undertakings. Corporate formalities were not followed when funds were transferred between the defendant, Guardian, and WPS.   Guardian and WPS were insolvent when the funds of customers were diverted as discussed above.   The funds were siphoned by the defendant, who was the sole member of both Guardian and WPS, for the

defendant's personal use.   Neither corporate entity maintained adequate corporate records.   In addition, the defendant operated Guardian and WPS as a constructive fraud and in an unjust manner, as described above.   As a result, the Court should pierce the corporate veil as to Guardian and WPS, and should treat the transfers as property of the debtor rather than as property of Guardian or WPS.

- The defendant failed to keep or preserve recorded information related to the business transactions of Guardian and WPS.   Specifically, the defendant has not kept or preserved the following documents:

  - Bank statements for a Guardian bank account with an account number ending in 4056 for the period of time between October 2010 and the present.

  - Bank statements for a WPS bank account with an account number ending in 4078 for the period of time between October 2010 and the present.

  - Bank statements for a Wells Fargo bank account with an account number ending in 4801 for the period of time between October 2010 and the present.

  - Bank statements for the defendant's Wings Financial Credit Union bank account for the period of time between October 2010 and the present.

  - Bank statements for a Guardian Wells Fargo bank account with an account number ending in 9342 for the period of time between October 2010 and the present.

  - Bank statements for a Guardian Wells Fargo bank account with an unknown bank account number (referenced as "Equity Line GGSE" in the defendant's personal Wells Fargo bank account) for the period of time between October 2010 and the present.

  - Bank statements for a Guardian Wells Fargo bank account with an unknown bank account number (referenced as "savings GGSE" in the defendant's personal Wells Fargo bank account) for the period of time between October 2010 and the present.

  - Bank statements for a Guardian Wells Fargo bank account with an unknown bank account number (referenced as "checking GGSE" in the

defendant's personal Wells Fargo bank account) for the period of time between October 2010 and the present.

- o Settlement agreements between Twin Cities Gold & Silver Exchange and the defendant and/or Guardian.

- o Settlement agreements between Asset Marketing Services and the defendant and/or Guardian.

- o Signed, written agreements between Double D Trading and WPS and/or Guardian and/or the defendant.

- o Signed, written agreements between Double D Trading and Margaret Huskey.

- o Signed, written agreements between Dr. Balcombe and Wealth Preservation Society and/or Double D Trading.

- o Signed, written agreements between Higher Ground Financial and Guardian Gold and/or the defendant.

- o A general ledger or checkbook register for all of the defendant's personal bank accounts, covering the period of time between October 30, 2010 and the present.

- The failure to keep or preserve the documents referenced above makes it impossible to ascertain the defendant's business transactions and financial condition.

- The defendant's failure to keep or preserve recorded information, including bank statements, is not justified under all of the circumstances of this case.

- As a result of the defendant's conduct, plaintiff is entitled to an order denying the defendants' discharge under 11 U.S.C. § 727(a)(3).

- The defendant knowingly and fraudulently made false oaths at the Rule 2004 examination by failing to disclose three bank accounts that belonged to Guardian, namely: (1) a Wells Fargo bank account with an unknown bank account number

(referenced as "Equity Line GGSE" in the defendant's personal Wells Fargo bank account); (2) a Wells Fargo bank account with an unknown bank account number (referenced as "savings GGSE" in the defendant's personal Wells Fargo bank account); and (3) a Wells Fargo bank account with an unknown bank account number (referenced as "checking GGSE" in the defendant's personal Wells Fargo bank account).

- The defendant knowingly and fraudulently made false oaths at the Rule 2004 examination by testifying that he never diverted funds from Guardian's customers to invest in WPS.

- As set forth above, Guardian was the alter ego of the defendant, and the defendant's false oaths were material omissions regarding the defendant's property and property of the bankruptcy estate.

- As a result of the defendant's false oaths, the plaintiff is entitled to an order denying the defendant's discharge under 11 U.S.C. § 727(a)(4)(A).

- As set forth above, Guardian and WPS were alter egos of the defendant.

- The defendant, through Guardian and WPS, received funds of at least $163,959.00 from Edwina Hibel on February 17, 2011.

- The defendant, through Guardian and WPS, received and liquidated gold coins with a value of $337,805.00 from Edwina Hibel on May 9, 2011.

- The defendant, through Guardian and WPS, received and liquidated coins with a value of at least $290,000.00 during January and February of 2012 from Dr. Joan Balcombe.

- The defendant maintains that he did not have any of the funds referenced above

13

when he filed his bankruptcy petition.

- The defendant has not provided a satisfactory explanation for the loss of the funds referenced above.

- As a result of the defendant's failure to provide a satisfactory explanation for the loss of the funds referenced above, the plaintiff is entitled to an order denying the defendant's discharge under 11 U.S.C. § 727(a)(5).

Dated: August 29, 2013

Colin Kreuziger
Trial Attorney

Subscribed and Sworn Before Me This _____29<u>th</u>_____ Day of August, 2013.

Notary Public

THOMAS E. KLEINER
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2015

14

| | | |
|---|---|---|
| In re: | | |
| Raymond F. Hanisco, | | |
| | | **Chapter 7** |
| | Debtor. | **BK 12-46203** |

| | | |
|---|---|---|
| Daniel M. McDermott, United States Trustee, | | |
| | Plaintiff, | **Adv. No. 13-04202** |
| vs. | | |
| Raymond F. Hanisco, | | |
| | Defendant. | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW,**
**AND ORDER FOR JUDGMENT**

The plaintiff's application for default judgment is before the court. Based on the application and supporting documents, the Court makes the following:

### Findings of Fact and Conclusions of Law

1. The defendant is a resident of the State of Minnesota.

2. The defendant filed a voluntary petition on October 30, 2012.

3. The defendant was the sole member of Guardian Gold & Silver Exchange, LLC ("Guardian"), its registered agent, and its president. Guardian operated a business that conducted transactions with customers around the country. Specifically, Guardian solicited customers to purchase gold and coins from Guardian ("Purchase Transactions"). Guardian also marketed to and solicited consumers to sell their gold and silver coins to Guardian ("Liquidation Transactions"). Finally, Guardian solicited customers to trade

their gold or coins for other metals or coins ("Trade Transactions").

4. The defendant was the sole member of Wealth Preservation Society, LLC ("WPS") and its president. Guardian and WPS operated out of the same facility, and funds were transferred between Guardian, WPS, the defendant, and the defendant's girlfriend, Margaret Huskey, without regard to any corporate formalities. The defendant claims that he, Ms. Huskey, and Guardian provided funds to WPS, but the defendant did not maintain any documents to verify any of the investments. According to the defendant's testimony at a Rule 2004 examination, WPS had an agreement with Double D Trading to invest in a gold ore tailings venture and share the profits from the venture. The defendant testified that Double D Trading was an entity owned and managed by an individual named Mark Dagel. The venture involved Double D Trading obtaining a leasehold interest in a gold mine site and processing gold ore tailings for the purpose of extracting precious metals from the tailings to sell for a profit. The defendant also testified that Ms. Huskey had an arrangement with the defendant, Guardian, WPS, and Double D Trading that required her to invest her personal funds with Double D Trading. The agreement further provided that Ms. Huskey would receive her investment and half of the profit generated by the investments back from Double D Trading. The other half of the profit generated by her investments would be gifted by Ms. Huskey to Guardian, and Guardian would use the funds to pay its creditors. Guardian, however, never made any such payments to its creditors.

5. Dr. Joan Balcombe, a creditor of the defendant's, sent approximately $290,000.00 in coins to the defendant in January and February of 2012. Dr. Balcombe understood that the defendant would invest the funds generated from the liquidation of her coin collection in the WPS ore tailings venture. The defendant testified at a Rule 2004 examination that he liquidated the coins and invested the funds in WPS. The defendant testified that the

2

funds he received from liquidating Ms. Balcombe's coins were deposited into Guardian's M&I bank account, transferred to WPS's bank account, and then transferred to Double D Trading. The defendant, however, did not produce any documents to demonstrate that the funds were ever deposited in Guardian's M&I bank account, transferred to WPS, and then transferred to Double D Trading. For example, the defendant has not produced any bank statements for WPS despite multiple requests by the United States Trustee.

6. In connection with the Purchase Transactions, the defendant represented to customers that they could send funds to Guardian, and that the funds would be used to purchase coins or other precious metals. The defendant also caused employees or independent contractors working for Guardian to make such representations. At the time that the representations were made, the defendant knew that Guardian was insolvent and could not afford to pay its attorney fees and lawsuit settlement payments. The defendant also knew that he would use some or all of the customer funds that he solicited to pay attorney fees, lawsuit settlement payments, or to invest in WPS. The defendant was the only signatory on bank accounts owned by Guardian. He personally directed that funds provided by customers for the purchase of items would be used instead to pay attorney fees, lawsuit settlement payments, or to invest in WPS. In those instances, Guardian did not use the funds sent by customers to purchase the items that Guardian or the defendant previously represented it would purchase on behalf of its customers.

7. For example, on February 17, 2011, Edwina Hibel sent Guardian $237,000.00 to purchase gold coins. The defendant testified that some of the funds were sent to an entity called Higher Ground Financial Services ("Higher Ground") to purchase the coins. The defendant testified that Higher Ground never sent the coins to Guardian. The books and records of Guardian, however, indicate that Guardian wired $163,959.00 from its account to WPS's bank account on February 17, 2011. On the same day, WPS transferred

$30,000.00 to Guardian and marked the entry in its books as "owner salary." The following day, $123.510.00 was wired out of the WPS account to an unknown recipient. According to the defendant, there were no written agreements between himself, Guardian, or WPS regarding any of these transactions.

8. In connection with the Trade Transactions, the defendant, through Guardian, represented to Eleanor Dubey, a customer, that she could trade her collection of gold coins to the defendant in return for $274,750.00 in gold ingots. Ms. Dubey sent the gold coins to Guardian, and Guardian liquidated the coins for $337,805.00 on May 9, 2011. The funds were wired into Guardian's bank account, and Ms. Dubey never received the gold ingots. The defendant has not explained the disposition of the $337,805.00, but he admits that the funds were used for a purpose other than paying Ms. Dubey. The defendant also admitted that, without the funds realized from the liquidation of Ms. Dubey's gold coins, Guardian was insolvent.

9. In addition to Ms. Huskey and DD Trading, the defendant also solicited Dr. Joan Balcombe to invest in WPS in early 2012. The defendant claims that Ms. Balcombe agreed to send her coin collection for liquidation by the defendant. He also claims that she agreed to invest the proceeds in WPS. Dr. Balcombe did, in fact, provide the coins to the defendant, and they were liquidated for over $290,000.00. The defendant claims that the funds were routed to either Guardian or WPS's bank account, and the funds then were transferred to DD Trading. The defendant, however, has no record of the disposition of the funds. The defendant was the only signatory on bank accounts owned by WPS.

10. The United States Trustee conducted an examination of the defendant pursuant to Fed. R. Bankr. P. 2004 on March 21, 2013. The United States Trustee adjourned the examination to a later date and requested a number of additional documents, including the following:

a. Bank statements for a Guardian bank account with an account number ending in 4056 for the period of time between October 2010 and the present.

b. Bank statements for a WPS bank account with an account number ending in 4078 for the period of time between October 2010 and the present.

c. Bank statements for a Wells Fargo bank account with an account number ending in 4801 for the period of time between October 2010 and the present.

d. Bank statements for the defendant's Wings Financial Credit Union bank account for the period of time between October 2010 and the present.

e. Bank statements for a Guardian Wells Fargo bank account with an account number ending in 9342 for the period of time between October 2010 and the present.

f. Bank statements for a Guardian Wells Fargo bank account with an unknown bank account number (referenced as "Equity Line GGSE" in the defendant's personal Wells Fargo bank account) for the period of time between October 2010 and the present.

g. Bank statements for a Guardian Wells Fargo bank account with an unknown bank account number (referenced as "savings GGSE" in the defendant's personal Wells Fargo bank account) for the period of time between October 2010 and the present.

h. Bank statements for a Guardian Wells Fargo bank account with an unknown bank account number (referenced as "checking GGSE" in the defendant's personal Wells Fargo bank account) for the period of time between October 2010 and the present.

i. Settlement agreements between Twin Cities Gold & Silver Exchange and the defendant and/or Guardian.

j. Settlement agreements between Asset Marketing Services and the defendant and/or Guardian.

k. Signed, written agreements between Double D Trading and WPS and/or Guardian and/or the defendant.

l. Signed, written agreements between Double D Trading and Margaret Huskey.

m. Signed, written agreements between Balcombe and Wealth Preservation Society and/or Double D Trading.

n. Signed, written agreements between Higher Ground Financial and Guardian Gold and/or the defendant.

o. A general ledger or checkbook register for all of the defendant's personal bank accounts, covering the period of time between October 30, 2010 and the present.

The United States Trustee also requested that the examination be reconvened. The

defendant did not provide the documents referenced above, and he has not responded to

the request to reconvene the examination.

11. The defendant transferred $163,959.00 from Guardian's Bank account to WPS's bank account on February 17, 2011. As set forth below, Guardian and WPS were alter egos for the defendant, and therefore the funds were property of the debtor. The funds were diverted to either the defendant or WPS and used for the defendant's personal purposes. Prior to the transfer of the funds, the defendant or Guardian represented to Edwina Hibel that the funds she provided to Guardian would be used to purchase gold coins. The defendant had no intention of using the funds to purchase gold coins for Ms. Hibel, and therefore the representations were fraudulent. The defendant transferred the funds with the intent to hinder, delay or defraud his creditors, including Ms. Hibel. The defendant continued to conceal the funds from Ms. Hibel within one year of the filing of his bankruptcy petition.

12. The defendant transferred $337,805.00 from Guardian's Bank account to unknown recipients at some time after receipt of the funds from Ms. Dubey on May 9, 2011. As set forth below, Guardian and WPS were alter egos for the defendant, and therefore the funds were property of the debtor. Prior to the transfer of the funds, the defendant or Guardian represented to Ms. Dubey that Guardian would liquidate her gold coins and use the proceeds to purchase gold ingots, which would be shipped to Ms. Dubey. The defendant had no intention of purchasing the gold ingots for Ms. Dubey, and therefore the representations were fraudulent. The defendant transferred the funds with the intent to hinder, delay or defraud his creditors, including Ms. Dubey. The defendant continued to conceal the funds from Ms. Dubey within one year of the filing of his bankruptcy petition.

13. The defendant transferred at least $290,000.00 from Guardian's bank account or WPS's bank account to unknown recipients at some time after receipt of the funds from the

liquidation of Dr. Balcombe's coin collection. As set forth below, Guardian and WPS were alter egos for the defendant, and therefore the funds were property of the debtor. Prior to the transfer of the funds, the defendant represented to Dr. Balcombe that WPS would invest the funds and return the investment to Dr. Balcombe with interest. The defendant had no intention of returning the investment to Dr. Balcombe, and therefore the representations were fraudulent. The defendant transferred the funds with the intent to hinder, delay or defraud his creditors, including Dr. Balcombe. The defendant transferred the funds within one year of the filing of his bankruptcy petition.

14. Guardian and WPS were alter egos for the defendant. Neither entity was sufficiently capitalized for the purposes of their respective corporate undertakings. Corporate formalities were not followed when funds were transferred between the defendant, Guardian, and WPS. Guardian and WPS were insolvent when the funds of customers were diverted as discussed above. The funds were siphoned by the defendant, who was the sole member of both Guardian and WPS, for the defendant's personal use. Neither corporate entity maintained adequate corporate records. In addition, the defendant operated Guardian and WPS as a constructive fraud and in an unjust manner, as described above. As a result, the Court pierces the corporate veil as to Guardian and WPS, and treats the transfers as property of the debtor rather than as property of Guardian or WPS.

15. As a result of the defendant's conduct, plaintiff is entitled to an order denying the defendants' discharge under 11 U.S.C. § 727(a)(2)(A).

16. The defendant failed to keep or preserve recorded information related to the business transactions of Guardian and WPS. Specifically, the defendant has not kept or preserved the following documents:

    a. Bank statements for a Guardian bank account with an account number ending in 4056 for the period of time between October 2010 and the present.

b.  Bank statements for a WPS bank account with an account number ending in 4078 for the period of time between October 2010 and the present.

c.  Bank statements for a Wells Fargo bank account with an account number ending in 4801 for the period of time between October 2010 and the present.

d.  Bank statements for the defendant's Wings Financial Credit Union bank account for the period of time between October 2010 and the present.

e.  Bank statements for a Guardian Wells Fargo bank account with an account number ending in 9342 for the period of time between October 2010 and the present.

f.  Bank statements for a Guardian Wells Fargo bank account with an unknown bank account number (referenced as "Equity Line GGSE" in the defendant's personal Wells Fargo bank account) for the period of time between October 2010 and the present.

g.  Bank statements for a Guardian Wells Fargo bank account with an unknown bank account number (referenced as "savings GGSE" in the defendant's personal Wells Fargo bank account) for the period of time between October 2010 and the present.

h.  Bank statements for a Guardian Wells Fargo bank account with an unknown bank account number (referenced as "checking GGSE" in the defendant's personal Wells Fargo bank account) for the period of time between October 2010 and the present.

i.  Settlement agreements between Twin Cities Gold & Silver Exchange and the defendant and/or Guardian.

j.  Settlement agreements between Asset Marketing Services and the defendant and/or Guardian.

k.  Signed, written agreements between Double D Trading and WPS and/or Guardian and/or the defendant.

l.  Signed, written agreements between Double D Trading and Margaret Huskey.

m.  Signed, written agreements between Dr. Balcombe and Wealth Preservation Society and/or Double D Trading.

n.  Signed, written agreements between Higher Ground Financial and Guardian Gold and/or the defendant.

17. The failure to keep or preserve the documents referenced in Paragraph 16 makes it impossible to ascertain the defendant's business transactions and financial condition.

18. The defendant's failure to keep or preserve recorded information, including bank statements, is not justified under all of the circumstances of this case.

19. As a result of the defendant's conduct, plaintiff is entitled to an order denying the defendants' discharge under 11 U.S.C. § 727(a)(3).

20. The defendant knowingly and fraudulently made false oaths at the Rule 2004 examination by failing to disclose three bank accounts that belonged to Guardian, namely: (1) a Wells Fargo bank account with an unknown bank account number (referenced as "Equity Line GGSE" in the defendant's personal Wells Fargo bank account); (2) a Wells Fargo bank account with an unknown bank account number (referenced as "savings GGSE" in the defendant's personal Wells Fargo bank account); and (3) a Wells Fargo bank account with an unknown bank account number (referenced as "checking GGSE" in the defendant's personal Wells Fargo bank account).

21. The defendant knowingly and fraudulently made false oaths at the Rule 2004 examination by testifying that he never diverted funds from Guardian's customers to invest in WPS.

22. As set forth above, Guardian was the alter ego of the defendant, and the defendant's false oaths were material omissions regarding the defendant's property and property of the bankruptcy estate.

23. As a result of the defendant's false oaths, the plaintiff is entitled to an order denying the defendant's discharge under 11 U.S.C. § 727(a)(4)(A).

24. As set forth above, Guardian and WPS were alter egos of the defendant.

25. The defendant, through Guardian and WPS, received funds of at least $163,959.00 from Edwina Hibel on February 17, 2011.

26. The defendant, through Guardian and WPS, received and liquidated gold coins with a value of $337,805.00 from Elizabeth Dubey on May 9, 2011.

27. The defendant, through Guardian and WPS, received and liquidated coins with a value of at least $290,000.00 during January and February of 2012 from Dr. Joan Balcombe.

9

28. The defendant maintains that he did not have any of the funds referenced above when he filed his bankruptcy petition.

29. The defendant has not provided a satisfactory explanation for the loss of the funds referenced above.

30. As a result of the defendant's failure to provide a satisfactory explanation for the loss of the funds referenced above, the plaintiff is entitled to an order denying the defendant's discharge under 11 U.S.C. § 727(a)(5).

## Order for Judgment

IT IS HEREBY ORDERED: The defendant's discharge in the bankruptcy case numbered 12-46203 is hereby denied.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: _____

                                         Kathleen H. Sanberg
                                         United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

**In re:**

**Raymond F. Hanisco,**                                    **Chapter 7**

                **Debtor.**                          **BK 12-46203**

---

**Daniel M. McDermott, United States Trustee,**

                **Plaintiff,**                   **Adv. No. 13-04202**

**vs.**

**Raymond F. Hanisco,**

                **Defendant.**

---

## AFFIDAVIT OF SERVICE

---

The undersigned hereby certifies that she is an employee in the Office of the United States Trustee for the District of Minnesota and is a person of such age and discretion as to be competent to serve papers.

That on August 29, 2013, she served a copy of the attached: Application for Default Judgment, Affidavit of Default, Exhibits, Affidavit of Identification, Exhibits, Affidavit on Merits and Amount Due, and proposed Findings of Fact, Conclusions of Law and Order for Judgment, by placing said copies in a postpaid envelope addressed to the persons, herein after named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Minneapolis, Minnesota.

**Addressees**:

Raymond F Hanisco
18756 Nature Lane
Eden Prairie, MN 55346

Chad J. Bolinske
Bolinske & Bolinske PLLC
6465 Wayzata Blvd, Suite 780
St. Louis Park, MN 55426

**Office of the United States Trustee**
**Audrey Williams**

**Subscribed and sworn to before**
**me this $2\nd$ day of August, 2013.**

**Notary Public**

THOMAS E. KLEINER
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2015

2